Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| LUZ J. MORALES IRIZARRY<br><br>Parte Apelante<br><br>v.<br><br>ALTERNATE CONCEPTS, INC.; AIG INSURANCE COMPANY; COMPAÑÍA ASEGURADORA "A"; FULANO DE TAL Y SUTANO DE TAL<br><br>Parte Apelada | TA2025AP00306 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso número: SJ2024CV05558<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidenta, la jueza Rivera Marchand, la jueza Mateu Meléndez, la jueza Boria Vizcarrondo y el juez Robles Adorno.

Robles Adorno, Juez Ponente.

# S E N T E N C I A

En San Juan, Puerto Rico, a 14 de octubre de 2025.

El 9 de septiembre de 2025, la señora Luz J. Morales Irizarry (la señora Morales Irizarry o la apelante) presentó ante nos un recurso de *Apelación* en el que solicitó que revoquemos la *Sentencia Final* emitida el 8 de julio de 2025, notificada el 9 de julio de 2025, por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI o foro primario).[1]

En el aludido dictamen, el TPI resolvió que, luego de evaluar las mociones presentadas por las partes, declaró Ha Lugar la *Moción solicitando Sentencia Sumaria* instada por Alternate Concepts, Inc y AIG Insurance Company (en conjunto, parte apelada). A su vez, desestimó, con perjuicio, el pleito.

Por los fundamentos que expondremos a continuación, modificamos la *Sentencia* apelada y así modificada, la confirmamos.

---

[1] Entrada Núm. 32 del caso SJ2024CV05558 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

**I.**

El caso de epígrafe tiene su inicio cuando el 18 de junio de 2024, la apelante instó una *Demanda* en la que alegó que el 14 de mayo de 2024, sufrió una caída en la entrada de la estación del Tren urbano de la Ave. Roosevelt en San Juan, Puerto Rico.[2] Como consecuencia de la caída, la señora Morales Irizarry sufrió varios daños físicos y, como resultado de estos, tuvo una intervención quirúrgica. Ante ello, argumentó que, Alternate Concepts, Inc., era el responsable de los daños que sufrió ante su negligencia en no mantener en condiciones aptas las inmediaciones de la estación del tren. En esa línea, arguyó que Alternate Concepts, Inc., no colocó un aviso que alertara a los peatones acerca del estado de la acera. Consecuentemente, ante este cuadro, la apelante solicitó una suma de $100,000.00 en concepto de los daños físicos y, por otro lado, el monto de $15,000.00 en relación con las angustias mentales.

El 24 de julio de 2024, AIG Insurance Company, radicó una *Contestación a demanda* en la que negó ser el responsable de los daños sufridos por la apelante toda vez que Alternate Concepts Inc., era la operadora del Tren Urbano y no era la entidad responsable del mantenimiento de las aceras.[3] Por ende, AIG Insurance Company, no tenía que responder como aseguradora de Alternate Concepts Inc. Argumentó que, no existía un nexo causal entre los daños que sufrió la apelante y la responsabilidad que la señora Morales Irizarry le imputó a AIG Insurance Company. Por tanto, el TPI debía desestimar, con perjuicio, la *Demanda* instada en su contra.

El 26 de julio de 2024, Alternate Concepts Inc., presentó una *Contestación a demanda* en la que adujo que no respondía por los

---

[2] Entrada Núm. 1 del caso SJ2024CV05558 en el SUMAC.
[3] Entrada Núm. 7 del caso SJ2024CV05558 en el SUMAC.

daños ocasionados por la caída de la señora Morales Irizarry.[4] A su vez, razonó que no había un nexo causal entre la responsabilidad que le imputó la apelante y los daños que esta sufrió toda vez que era previsible el estado de la acera. De igual manera, Alternate Concepts Inc., sostuvo que, se encargaba de los aspectos operacionales del Tren Urbano y no el mantenimiento de las aceras.

Tras diversos trámites procesales, el 13 de noviembre de 2024, fue celebrada la *Conferencia Inicial* en la que las partes le informaron al foro primario en que etapa se encontraban acerca del descubrimiento de prueba.[5] Así las cosas, el TPI evaluó la información ante su consideración y determinó que el descubrimiento de prueba debía ser extendido hasta el 29 de febrero de 2025. Además, señaló la *Conferencia con Antelación a Juicio* y Vista de transacción para el 31 de marzo de 2025.

Luego de varias suspensiones de vistas, el 3 de junio de 2025, las partes presentaron un *Informe de conferencia con antelación al juicio*[6] en el que las partes estipularon los siguientes asuntos incontrovertidos:

> 1. La caída de la Sra. Luz J. Morales Irizarry ocurrió el 14 de mayo de 2024.
> 2. No existe controversia sobre la autenticidad de las copias certificadas de los expedientes médicos de la demandante relacionados al tratamiento médico recibido.
> 3. Autenticidad de Fotografías del lugar de los hechos, una vez se indiquen las fotos que se van a utilizar y el nombre de las personas que las tomó.
> 4. La póliza número 63-005-004000162-1 expedida por AIG Insurance Company – Puerto Rico está sujeta y supeditada a sus términos, condiciones, limitaciones y exclusiones.[7]

Por otro lado, expusieron los siguientes hechos, documentos y asuntos donde existe controversia:

> PARTE DEMANDANTE:
> 1. Si la parte demandada fue negligente y responde por los daños sufridos por el demandante.
> 2. La valoración de los daños sufridos por el demandante.
> PARTES CODEMANDADAS AIG Y ACI
> 1. Negligencia de las partes codemandadas, si alguna.

---

[4] Entrada Núm. 10 del caso SJ2024CV05558 en el SUMAC.
[5] Entrada Núm. 10 del caso SJ2024CV05558 en el SUMAC.
[6] Entrada Núm. 23 del caso SJ2024CV05558 en el SUMAC.
[7] Entrada Núm. 23 del caso SJ2024CV05558 en el SUMAC, pág. 4.

2. Negligencia comparada de la demandante.
3. Relación causal de los daños alegados y la caída a que se refiere la demanda.[8]
4. Naturaleza, extensión y cuantía de los daños reclamados.
5. Conocimiento de la parte demandada de la alegada condición de peligrosidad.
6. Aplicabilidad de Cardenas Maxxan v. Rodríguez, 125 DPR702 (1990).

En dicho Informe, las partes enumeraron los testigos que testificarían en el juicio. Particularmente, la parte apelada informó que, uno de sus testigos era el señor Rafael Blanco, empleado de Alternate Concepts Inc. Sostuvo que, el testimonio del señor Rafael Blanco versaría sobre la falta de responsabilidad y mantenimiento que tenía Alternate Corporate, Inc., Autoridad de Carreteras y Transporte y la Autoridad de Transporte Integrado sobre el mantenimiento de las aceras. A esos fines, señaló que, el testigo indicaría que el área en donde se cayó la señora Morales Irizarry no estaba sujeta a la responsabilidad de la parte apelada ni los organismos administrativos previamente mencionados.

Por otro lado, la parte apelada razonó que no podía lograr un acuerdo transaccional con la señora Morales Irizarry dado que no era la encargada del mantenimiento del área en donde se cayó la apelante. Por ende, la parte apelada no era responsable de la acera que se encuentra frente a la entrada de la estación del Tren Urbano.

El 4 de junio de 2025, la parte apelada instó una *Moción solicitando sentencia sumaria* en la que rogó la desestimación del pleito bajo el fundamento de que Alternate Concepts, Inc., no era la dueña de la acera o el área en donde ocurrió la caída de la señora Morales Irizarry.[9] En la mencionada moción, la parte apelada esgrimió los siguientes hechos incontrovertidos:

1. La demandante alega que el 14 de mayo de 2024, mientras caminaba por las inmediaciones del Tren Urbano en la Ave. Roosevelt in San Juan tropezó con un clavo que sobresalía de una de las uniones de los bloques o adoquines que allí se encontraban, lo que provocó que perdiera el balance y cayera al suelo sufriendo daños.

---

[8] Entrada Núm. 23 del caso SJ2024CV05558 en el SUMAC, págs. 4-5.
[9] Entrada Núm. 24 del caso SJ2024CV05558 en el SUMAC.

2. La demandante alega que la negligencia de la ACI consistió en no mantener las inmediaciones en condiciones aptas para que los transeúntes pudieran caminar sin la necesidad de poner en riesgo su seguridad; y en no poner aviso alguno que alertara a los transeúntes de tal condición peligrosa.

3. ACI no es la administradora ni la dueña del Tren Urbano. Conforme el contrato existente entre la Autoridad de Carreteras y Transportación ("ACT") y ACI-Herzog A Joint Venture ("ACI-Herzog") de fecha 30 de junio de 2017, ACT es la dueña del Tren Urbano y ACI- Herzog es el administrador/operador del mismo hasta el 30 de junio de 2032.

4. ACI no es la dueña de la acera, o del área en donde la demandante alega se tropezó y se cayó. Tampoco tiene el control, custodia o el deber de mantenimiento sobre dicha área.

5. ACI, ACI-Herzog ni la ACT tienen inherencia ni desarrollaba obras de construcción en el momento y lugar donde ocurrió el accidente objeto de esta demanda.

Con ello, argumentó que, en el contrato suscrito con la Autoridad de Carreteras y Transportación surge que Alternate Corporations, Inc., se encargaba estrictamente de las áreas operacionales del Tren Urbano. Alegó que, el mantenimiento de la acera en donde se produjo las lesiones físicas de la señora Morales Irizarry, era responsabilidad de la Autoridad de Carreteras y Transportación. Además, adujo que, la construcción que había en la acera tampoco estaba autorizada por la Autoridad de Carreteras y Transportación. Cónsono con lo anterior, la parte apelada alegó que la responsabilidad del mantenimiento de las aceras le correspondía a los municipios. Consecuentemente, se debía desestimar el pleito en favor de la parte apelada debido a que no era la responsable en mantener en buen estado la acera en donde ocurrió la caída de la apelante.

El 5 de junio de 2025, el foro primario emitió una *Orden* en la que le concedió un término de veinte (20) días para que la apelante presentara su posición.[10]

El 6 de junio de 2025, el TPI emitió una *Minuta,* con respecto a la *Conferencia con Antelación a Juicio* celebrada el 5 de junio de 2025, en la que resolvió que, pese a que la *Moción solicitando*

---

[10] Entrada Núm. 25 del caso SJ2024CV05558 en el SUMAC.

*sentencia sumaria,* fue presentada tardía iba a atenderla en sus méritos.[11] También, el *foro a quo* informó que aprobó el *Informe de conferencia con antelación al juicio* y dejó sin señalamientos el caso hasta que se adjudicara la *Moción solicitando sentencia sumaria.*

El 10 de junio de 2025, la señora Morales Irizarry radicó una *Oposición a solicitud de sentencia sumaria* en la que alegó que la desestimación no podía extenderse a AIG Insurance Company en virtud de que era la compañía aseguradora de la Autoridad de Carreteras y Transportación.[12] En lo pertinente, arguyó que, la Autoridad de Carreteras y Transportación era la dueña del área en donde la apelante sufrió la caída. Con ello, adujo que aún estaba en controversia si Alternate Concepts Inc., tenía el deber de mantener las aceras en condiciones seguras para los peatones. Además, reclamó que aún existía controversia en cuanto a si la Autoridad de Carreteras y Transportación era la verdadera responsable de la acera dado que la caída fue a pasos de la entrada de la estación del Tren Urbano. Sin embargo, indicó que no tenía reparo en allanarse a únicamente disponer el caso sumariamente en cuanto a Alternate Concepts, Inc. No obstante, el pleito no podía disponerse sumariamente con respecto a la Autoridad de Transportación y Carreteras y AIG Insurance Company.

El 11 de junio de 2025, el TPI emitió una *Orden señalamiento* en la que señaló una vista argumentativa para el 26 de junio de 2025.[13]

El 18 de junio de 2025, la apelante presentó una *Demanda Enmendada* en la que incluyó a la Autoridad de Carreteras y Transportación y al Estado Libre Asociado de Puerto Rico en aras de

---

[11] Entrada Núm. 26 del caso SJ2024CV05558 en el SUMAC.
[12] Entrada Núm. 27 del caso SJ2024CV05558 en el SUMAC.
[13] Entrada Núm. 28 del caso SJ2024CV05558 en el SUMAC.

que fueran incluidos en el pleito instado en contra de la parte apelada.[14]

Ese mismo día, el TPI emitió una *Orden* en la que no autorizó la presentación de la *Demanda Enmendada* debido a que el pleito se encontraba en una etapa avanzada.[15]

Así las cosas, el 8 de julio de 2025, notificada el 9 de julio de 2025, el foro primario emitió una *Sentencia Final* en la que resolvió que procedía desestimación, con perjuicio, en favor de Alternate Concepts, Inc., y AIG Insurance Company.[16] Asimismo, determinó que procedía declarar Ha Lugar la *Moción solicitando sentencia sumaria* instada por la apelante.

El 23 de julio de 2025, la señora Morales Irizarry instó una *Moción en solicitud de reconsideración* en la que arguyó que advino en conocimiento del contrato suscrito entre la Autoridad de Carreteras y Transportación y Alternate Concepts Inc., cuando la parte apelada presentó su oposición a la *Moción solicitando sentencia sumaria*.[17] Ello, en virtud de que la parte apelada, en apoyo a su oposición, anejó dicho contrato. Consecuentemente, la apelante adujo que desconocía que habían otras entidades responsables de la condición de peligrosidad que tenía el área en donde se cayó. Por tanto, presentó una *Demanda Enmendada* para añadir al pleito a la Autoridad de Transportación y Carreteras y el Estado Libre Asociado de Puerto Rico para que pudiesen responder por los daños que esta sufrió. Por ende, la señora Morales Irizarry solicitó que el *foro a quo* autorizara la *Demanda Enmendada* y dejara sin efecto la *Sentencia Final* emitida.

El 1 de julio de 2025, la parte apelada radicó una *Oposición a moción en solicitud de reconsideración* en la que argumentó que le

---

[14] Entrada Núm. 30 del caso SJ2024CV05558 en el SUMAC.
[15] Entrada Núm. 31 del caso SJ2024CV05558 en el SUMAC.
[16] Entrada Núm. 32 del caso SJ2024CV05558 en el SUMAC.
[17] Entrada Núm. 34 del caso SJ2024CV05558 en el SUMAC.

informó a la apelante en la *Contestación a la demanda* y en el *Informe de Manejo de Caso* que a la parte apelada no le correspondía la administración del Tren Urbano.[18] Además, reclamó que la apelante no fue diligente en auscultar en el descubrimiento de prueba quienes eran los organismos administrativos encargados del Tren Urbano.

El 4 de agosto de 2025, el TPI emitió y notificó una *Resolución Interlocutoria* en la que declaró No Ha Lugar a la *Moción en solicitud de reconsideración.*[19]

Inconforme con el dictamen, el 2 de septiembre de 2024, la apelante compareció ante nos mediante un recurso de *Apelación* en el que formuló los siguientes señalamientos de error:

> Primer error: Erró el TPI al no permitir enmendar la demanda de epígrafe a pesar de haber sido presentada previo a resolver la moción de sentencia sumaria.

> Segundo error: Erró el TPI al declarar con lugar la moción de sentencia sumaria toda vez que existen controversias de hechos materiales en cuanto al lugar donde ocurrió la caída objeto de la demanda y la identidad de las partes co-causantes adicionales de los daños, entre otros.

En atención a nuestra *Resolución*, el 1 de octubre de 2025, la parte apelada presentó una *Oposición a recurso de apelación*.

Con el beneficio de la comparecencia de las partes, procederemos a resolver el caso de epígrafe.

**II.**

**A.**

La Regla 13.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 13.1, permite a las partes en un pleito enmendar sus alegaciones e incluir cuestiones omitidas o aclarar reclamaciones. 32 LPRA Ap. V., R. 13.1; *Colón Rivera v. Wyeth Pharm.*, 184 DPR 184, 197 (2012). A esos efectos, la citada Regla establece lo siguiente:

> Cualquier parte podrá enmendar sus alegaciones en cualquier momento antes de habérsele notificado una alegación responsiva. Si su alegación es de las que no

---

[18] Entrada Núm. 36 del caso SJ2024CV05558 en el SUMAC.
[19] Entrada Núm. 37 del caso SJ2024CV05558 en el SUMAC.

admiten alegación responsiva y el pleito no ha sido señalado para juicio, podrá de igual modo enmendarla en cualquier fecha dentro de los veinte (20) días de haber notificado su alegación. En cualquier otro caso, las partes podrán enmendar su alegación únicamente con el permiso del tribunal o mediante el consentimiento por escrito de la parte contraria; el permiso se concederá liberalmente cuando la justicia así lo requiera. La solicitud de autorización para enmendar las alegaciones deberá estar acompañada de la alegación enmendada en su totalidad. Una parte notificará su contestación a una alegación enmendada dentro del tiempo que le reste para contestar la alegación original o dentro de veinte (20) días de haberle sido notificada la alegación enmendada, cualquiera de estos plazos que sea más largo, a menos que el tribunal lo ordene de otro modo. 32 LPRA Ap. V., R. 13.1.

Así pues, el permiso para enmendar las alegaciones se podrá conceder liberalmente, cuando la justicia así lo requiera. *Íd*; R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta ed., San Juan, Ed. Lexis Nexis, 2017, sec. 2413, pág. 297. Sin embargo, la liberalidad de la Regla 13.1 para conceder enmiendas no es infinita, pues está condicionada por un ejercicio juicioso de discreción. *Ortiz Díaz v. R & R Motors Sales Corp.*, 131 DPR 829, 836 (1992); *Epifanio Vidal, Inc. v. Suro*, 103 DPR 793, 796 (1975).

Por ello, nuestro Máximo Foro ha establecido cuatro (4) elementos que los tribunales deben tomar en consideración al momento de decidir si se autoriza una enmienda. *Colón Rivera v. Wyeth Pharm, supra*, pág. 199. Los elementos por considerar son: 1) el impacto del tiempo transcurrido previo a la enmienda; 2) la razón de la demora; 3) el perjuicio a la otra parte; y 4) la procedencia de la enmienda solicitada. *Colón Rivera v. Wyeth Pharm, supra*; *SLG Sierra v. Rodríguez*, 163 DPR 738, 748 (2005). Todos estos factores deben considerarse conjuntamente al momento de determinar si procede la enmienda a la demanda. *Colón Rivera v. Wyeth Pharm., supra.*

Ahora bien, "el factor que resulta de mayor relevancia al momento de evaluar una solicitud de autorización para enmendar las alegaciones es el perjuicio que puede causarse a la parte contraria". *SLG Font Bardón v. Mini-Warehouse*, 179 DPR 322, 335

(2010). A esos efectos, en *Colón Rivera v. Wyeth Pharm, supra,* el Tribunal Supremo, citando al tratadista Cuevas Segarra, expresó que "cuando la propuesta enmienda altera radicalmente el alcance y naturaleza del caso, con un consecuencial cambio, convirtiendo la controversia inicial, en tangencial, el permiso debe ser denegado", pero ello no significa que no se puedan añadir nuevas teorías o reclamaciones. J.A. Cuevas Segarra, Tratado de Derecho Procesal Civil, 2da ed., San Juan, Pubs. JTS, 2011, T. II, pág. 594. No obstante, un mero cambio de teoría en las alegaciones no constituye un perjuicio indebido. *S.L.G. Font Bardón v. Mini–Warehouse, supra,* pág. 336.

**B.**

El mecanismo procesal de la sentencia sumaria surge de la Regla 36.1 de Procedimiento Civil, 32 LPRA, Ap. V, R. 36.1. El propósito de esta regla es facilitar la solución justa, rápida y económica de litigios civiles en los cuales no existe controversias reales y sustanciales de hechos materiales que no requieren ventilarse en un juicio plenario. *Batista Valentín v. Sucn. de José Enrique Batista Valentín y otros*, 2025 TSPR 93, 216 DPR ___ (2025). *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018); *Bobé et al. v. UBS Financial Services*, 198 DPR 6, 20 (2017); *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 430 (2013). El mecanismo de sentencia sumaria procede en los casos en los que no exista controversia reales y sustanciales en cuanto a los hechos materiales y reste disponer las controversias de derecho existentes. *Batista Valentín v. Sucn. de José Enrique Batista Valentín y otros*, 2025 TSPR 93, 216 DPR ___ (2025). *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 430 (2013); *PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* 136 DPR 881, 911-912 (1994). La parte que promueve la moción de sentencia sumaria debe establecer con claridad su derecho y demostrar que no existe controversia real en cuanto a algún hecho material. *González*

*Aristud v. Hosp. Pavía*, 168 DPR 127, 137 (2006). En específico, la Regla 36.1 de Procedimiento Civil, *supra,* R. 36.1, establece lo siguiente:

> Una parte contra la cual se haya formulado una reclamación podrá presentar, a partir de la fecha en que fue emplazado pero no más tarde de los treinta (30) días siguientes a la fecha límite establecida por el tribunal para concluir el descubrimiento de prueba, una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación.

No obstante, cualquier duda es insuficiente para derrotar una solicitud de sentencia sumaria. *Ramos Pérez v. Univisión,* 178 DPR 200, 213-214 (2010). Con ello, la duda debe ser de tal naturaleza que permita "concluir que existe una *controversia real y sustancial* sobre hechos relevantes y pertinentes". *Ramos Pérez v. Univisión, supra,* pág. 214.

En contraste, el oponente a la moción de sentencia sumaria está obligado a establecer que existe una controversia real en cuanto a algún hecho material a la controversia y, en ese sentido, no es cualquier duda la suficiente para derrotar la solicitud. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 138 (2015). El oponente, no puede descansar en meras aseveraciones o negaciones de sus alegaciones, sino que debe proveer contradeclaraciones juradas y documentos que sustenten los hechos materiales en disputa. *Batista Valentín v. Sucn. de José Enrique Batista Valentín y otros*, 2025 TSPR 93, 216 DPR ___ (2025). *SLG Zapata-Rivera v. JF Montalvo, supra,* pág. 213.; *Ramos Pérez v. Univisión, supra,* pág. 215; *Cruz Marcano v. Sánchez Tarazona,* 172 DPR 526, 550 (2007).

Entretanto, la Regla 36.3 de Procedimiento Civil, *supra*, R. 36.3, establece el procedimiento para la consideración de la moción de sentencia sumaria, así como el contenido de la moción y de la contestación de la parte promovida. Respecto a la moción solicitando

que se dicte una sentencia sumaria, la Regla 36.3(a) de Procedimiento Civil, *supra*, R. 36.3(a), dispone que tendrá que desglosar lo siguiente:

(1) una exposición breve de las alegaciones de las partes;
(2) los asuntos litigiosos o en controversia;
(3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria;
(4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;
(5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y
(6) el remedio que debe ser concedido.

La Regla 36.3(b) de Procedimiento Civil, *supra*, R. 36.3(b) prescribe que la contestación a la moción de sentencia sumaria debe contener, además de los sub incisos (1), (2) y (3) del inciso (a): una relación de los hechos esenciales y pertinentes que están en controversia, con referencia a los párrafos enumerados por la parte promovente y con indicación de la prueba en la que se establecen esos hechos; una enumeración de los hechos que no están en controversia; y las razones por las cuales no se debe dictar la sentencia, argumentando el derecho aplicable.

Así pues, a Regla 36.3(c) de Procedimiento Civil, *supra*, R. 36.3(c) añade que, cuando se presente una moción solicitando sentencia sumaria y se sostenga conforme a la Regla 36, *supra*, la parte promovida no podrá descansar en las aseveraciones contenidas en sus alegaciones. Por el contrario, estará obligada a contestar detallada y específicamente como lo haya hecho la parte promovente de la moción. De no hacerlo, la citada regla prescribe que se dictará la sentencia sumaria en su contra, si procede.

En esa línea, la Regla 36.5, *supra*, R. 36.5 establece que las declaraciones juradas para sostener u oponerse a la moción se

basarán en el conocimiento personal de la persona declarante y que contendrán los hechos que serían admisibles en evidencia y demostrarán afirmativamente que la persona declarante está cualificada para testificar en cuanto a su contenido. Asimismo, prescribe que "[c]opias juradas o certificadas de todos los documentos, o de partes de éstos en que se haga referencia en una declaración jurada, deberán unirse a la declaración o notificarse junto con ésta". *Íd.*

Por otro lado, la Regla 36.6, *supra*, instituye el mecanismo a seguir cuando no puedan obtenerse declaraciones juradas. Al respecto, estatuye que, si las declaraciones juradas de la parte que se oponga a la moción resultan que no puede presentar mediante declaraciones juradas hechos esenciales para justificar su oposición, entonces el tribunal podrá denegar la solicitud de sentencia sumaria o posponer su consideración. De posponer la consideración, el foro primario podrá dictar cualquier orden que entienda justa y le concederá a la parte promovida un término razonable para obtener declaraciones juradas, tomar deposiciones o conseguir que la parte contraria le facilite cierta evidencia.

Sin embargo, los tribunales no podrán dictar sentencia sumaria en cuatro situaciones: (1) cuando existan hechos materiales y esenciales controvertidos; (2) cuando existen alegaciones afirmativas en la demanda sin refutar; (3) cuando surge de los propios documentos que acompañan la moción en solicitud de sentencia sumaria que existe una controversia sobre algún hecho material o esencial; o (4) cuando no procede como cuestión de Derecho. *Oriental Bank v. Perapi*, 192 DPR 7, 26-27 (2014).

Conforme con esos principios, en *Meléndez González et al. v. M. Cuebas*, supra, el Tribunal Supremo delineó el estándar que el

Tribunal de Apelaciones debe utilizar para revisar una denegatoria o una concesión de una moción de sentencia sumaria.

En primer lugar, reafirmó que el Tribunal de Apelaciones se encuentra en la misma posición que el TPI al momento de revisar solicitudes de sentencia sumaria, siendo su revisión una *de novo* y teniendo la obligación de regirse por la Regla 36 de Procedimiento Civil, *supra*, y los criterios que la jurisprudencia le exige al foro primario. *Íd.*, pág. 118. Asimismo, deberá examinar el expediente de la manera más favorable hacia la parte promovida, llevando a cabo todas las inferencias permisibles a su favor. *Íd.* Ahora bien, reconoció que el foro apelativo está limitado, toda vez que no podrá tomar en consideración evidencia que las partes no presentaron ante el foro primario, ni podrá adjudicar los hechos materiales en controversia. *Íd.*

En segundo lugar, prescribió que el Tribunal de Apelaciones deberá revisar que tanto la moción en solicitud de sentencia sumaria, como la oposición, cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra*. Íd.

En tercer lugar, mandató que, ante la revisión de una sentencia dictada sumariamente, el Tribunal de Apelaciones deberá revisar si en realidad existen hechos materiales en controversia y, de haberlos, estará obligado a exponer específicamente cuáles hechos materiales están en controversia y cuáles no, en cumplimiento con la Regla 36.4 de Procedimiento Civil, *supra*, R. 36.4. *Íd.*

En cuarto lugar, dispuso que, si encuentra que los hechos materiales realmente no están en controversia, entonces el Tribunal de Apelaciones deberá revisar *de novo* si el foro primario aplicó correctamente el Derecho. *Íd.*, pág. 119.

**C.**

Una de las fuentes de las obligaciones surge cuando los actos y las omisiones en los que intervenga cualquier género de culpa o negligencia, está obligado a reparar el daño causado. Código Civil de Puerto Rico, 31 LPRA sec. 5141. El Art. 1536 del Código Civil de Puerto Rico, *supra* sec. 10801, establece que la persona que por culpa o negligencia causa daño a otra, viene obligada a repararlo. La culpa o negligencia consiste en "la falta de debido cuidado, que a la vez consiste en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en las mismas circunstancias". *López v. Porrata Doria*, 169 DPR 135, 151 (2006); *Toro Aponte v. ELA*, 142 DPR 464, 473 (1997). Para que prospere una acción de daños y perjuicios, el reclamante debe establecer: (1) la existencia de un daño real; (2) el nexo causal entre el daño y la acción u omisión del demandado, y (3) el acto u omisión cual tiene que ser culposo o negligente. *Cruz Flores et al. v. Hosp. Ryder et al.*, 210 DPR 465 (2022); *Pérez Hernández v. Lares Medical Center, Inc.*, 207 DPR 965, 976 (2021); *López v. Porrata Doria, supra*, pág. 150 (2006). La culpa o negligencia consiste en la falta del debido cuidado, que a la vez consiste en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en las mismas circunstancias. *Mena Pamias v. Jiménez Meléndez*, 212 DPR 758, 768 (2023). Véase, además, *Pérez Hernández v. Lares Medical Center, Inc., supra*, págs. 976–977; *López v. Porrata Doria, supra*, pág. 151; *Toro Aponte v. ELA*, 142 DPR 464, 473 (1997).

Ahora bien, entre el acto culposo y el daño sufrido debe existir un nexo causal adecuado. *Pérez Hernández v. Lares Medical Center, Inc., supra*, pág. 977. El nexo causal adecuado no es "causa de toda condición sin la cual no se hubiera producido el resultado, sino la

que ordinariamente lo produce, según la experiencia general". *Pérez Hernández v. Lares Medical Center, Inc.*, *supra*, págs. 976-977.

Así pues, una vez se imponga responsabilidad conforme a la normativa jurídica pormenorizada, se resarce al damnificado con un valor económico al daño sufrido. *Mena Pamias v. Jiménez Meléndez, supra*, pág. 769; citando a: *García Pagán v. Shiley Caribbean, etc.*, 122 DPR 193, 206 (1988).

**D.**

La Regla 39.2 (c) de Procedimiento Civil, *supra*, R. 39.2, establece que,

> (c) Después que la parte demandante haya terminado la presentación de su prueba, la parte demandada, sin renunciar al derecho de ofrecer prueba en caso de que la moción sea declarada "sin lugar", podrá solicitar la desestimación fundándose en que bajo los hechos hasta ese momento probados y la ley, la parte demandante no tiene derecho a la concesión de remedio alguno. El tribunal podrá entonces determinar los hechos y dictar sentencia contra la parte demandante, o podrá negarse a dictar sentencia hasta que toda la prueba haya sido presentada. A menos que el tribunal lo disponga de otro modo en su orden de desestimación, una desestimación bajo esta Regla 39.2 y cualquier otra desestimación, excepto la que se haya dictado por falta de jurisdicción o por haber omitido acumular una parte indispensable, tienen el efecto de una adjudicación en los méritos.

La desestimación del pleito es un pronunciamiento desfavorable para el demandante. Hernández Colón, *op.cit*, pág. 411. Los Tribunales están facultados en desestimar los pleitos con perjuicio en limitadas circunstancias y dicha determinación "se debe ejercer juiciosa y apropiadamente". *Maldonado v. Srio. de Rec. Naturales*, 113 DPR 494, 498 (1982). Esta facultad debe ejercerse con mesura dado que la desestimación priva al demandante de su día en corte para hacer valer las reclamaciones que tenga contra otros. *VS PR, LLC v. Drift Wind, Inc.*, 207 DPR 253, 264 (2021). Al momento de ponderar si procede imponer la sanción severa de la desestimación, el Tribunal debe hacer un balance de intereses entre atender el caso en sus méritos y la rápida dilucidación de las

controversias jurídicas. *VS PR, LLC v. Drift Wind, Inc.*, *supra*, pág. 264. Cuando un Tribunal desestima un pleito, tiene la discreción para determinar si la desestimación será sin perjuicio, permitiendo una posterior presentación de la reclamación. *VS PR, LLC v. Drift Wind, Inc.*, *supra*, pág. 267, citando a: *Souchet v. Cosío*, 83 DPR 758, 762–763 (1961).

### III.

En el primer señalamiento de error, la apelante alegó que el TPI erró en no autorizar la *Demanda Enmendada* debido a que, luego de la *Conferencia con Antelación al Juicio*, advino en conocimiento sobre otros organismos administrativos que pudieran responder por los daños que esta sufrió a consecuencia de la caída.

Según la normativa vigente, una parte puede enmendar las alegaciones, en cualquier fecha dentro de los veinte (20) días de haber notificado su alegación, de no ser una alegación responsiva que no admite y el pleito no ha sido señalado para juicio. De lo contrario, las partes podrán enmendar una alegación con el permiso del Tribunal o mediante el consentimiento escrito de las partes. Al respecto, un Tribunal puede conceder de manera liberal la enmienda a una alegación. Ante este cuadro, previo a conceder una enmienda a una alegación, un Tribunal debe considerar los siguientes factores al momento de determinar si procede conceder la enmienda solicitada, los cuales son: 1) el impacto del tiempo transcurrido previo a la enmienda; 2) la razón de la demora; 3) el perjuicio a la otra parte; y 4) la procedencia de la enmienda solicitada. *Colón Rivera v. Wyeth Pharm, supra.* No obstante, el Tribunal debe sopesar si el permitir la enmienda solicitada causaría un perjuicio entre las partes.

Tras un examen cuidadoso del expediente, resolvemos que el TPI no incidió en el error señalado por la apelante. Como se puede apreciar del tracto procesal del caso ante nos, la señora Morales

Irizarry presentó una *Demanda Enmendada,* luego de la *Moción en solicitud de sentencia sumaria.* Ello, puesto que alegadamente advino en conocimiento de otros posibles responsables de la condición de peligrosidad en que se encontraba la acera. Ciertamente, bajo el crisol doctrinario previamente contemplado, no procedía conceder la *Demanda Enmendada* dado que iba a ocasionarle un perjuicio a la parte apelada. A esos fines, la *Demanda Enmendada* producía el efecto de nuevamente iniciar un pleito con respecto a las personas jurídicas que la apelante quería añadir a la causa de acción. Asimismo, el pleito se encontraba en una etapa avanzada, por lo que autorizar la *Demanda Enmendada* laceraba los trámites procesales en los que se encontraba el caso. Por tanto, el foro primario actuó correctamente en no autorizar la *Demanda Enmendada.*

En su segundo señalamiento de error, la señora Morales Irizarry argumentó que el foro primario estaba vedado en resolver sumariamente el caso toda vez que existía controversia en cuanto al lugar en donde ocurrió la caída de la apelante. A su vez, la señora Morales Irizarry adujo que aún había controversia con relación a los cocausantes de los daños que la apelante sufrió.

Conforme las normas jurídicas pormenorizadas, nos encontramos en la misma posición que el TPI en revisar una solicitud de sentencia sumaria. En primer lugar, nos corresponde evaluar si las partes cumplieron con los requisitos de forma exigidos por la Regla 36.3 de Procedimiento Civil, *supra*, respecto a la moción de sentencia sumaria, así como su oposición.

Luego de evaluar la *Moción en solicitud de sentencia sumaria,* concluimos que esta cumplió con los requisitos de forma establecidos en la Regla 36.3 de Procedimiento Civil, *supra*, R. 36.3. En dicha solicitud, la parte apelada enumeró varias determinaciones de hechos que a su juicio no había controversia sobre ellos. En aras

de respaldar los hechos incontrovertidos, anejó los documentos correspondientes e hizo referencia a cada uno de ellos de forma específica.

Por otra parte, en la *Oposición a solicitud de sentencia sumaria* la apelante cumplió con los requisitos de forma dispuestos en la citada regla. Ello, pues la parte apelante enumeró los hechos en los que razonaba existía controversia de hechos y los hechos incontrovertidos.

Ahora nos corresponde determinar si existen hechos en controversia que imposibilitan la disposición sumaria del caso. Tras un examen cuidadoso del expediente y las mociones de sentencia sumaria y oposición, así como los documentos incluidos en las mociones de sentencia sumaria, concluimos que no existen hechos materiales en controversia. Consecuentemente, coincidimos con las determinaciones acogidas por el foro primario y, por tanto, adoptamos las determinaciones de hechos. Por último, nos corresponde revisar *de novo* si el TPI aplicó correctamente el derecho aplicable al caso de autos.

En lo que respecta al caso de autos, resolvemos que la señora Morales Irizarry no demostró que había un nexo causal entre el daño que sufrió y que el mismo fue ocasionado por negligencia de la parte apelada, específicamente, Alternate Corp, Inc. Además, en los documentos incluidos en la *Solicitud de la sentencia sumaria*, no surge que Alternate Corp., es el encargado del mantenimiento y conservación de la acera en donde ocurrió la caída de la señora Morales Irizarry. Incluso, la apelante indicó en su oposición que, no tenía inconveniente en que se desestimara el caso con respecto a Alternate Corp. Por ende, el *foro a quo* actuó correctamente en desestimar, con perjuicio, y disponer sumariamente el caso con respecto a Alternate Corp., debido a que no era el responsable del

mantenimiento del lugar en donde ocurrió la caída de la señora Morales Irizarry.

Por otro lado, puntualizamos que el caso no debió ser desestimado, con perjuicio, en cuanto a la aseguradora AIG Insurance. Ello, dado que aún hay controversia en cuanto a si verdaderamente AIG Insurance es la aseguradora de los otros aparentes cocausantes de los daños sufridos por la señora Morales Irizarry. Enfatizamos que, ante la presente controversia estamos imposibilitados de disponer sumariamente del caso con relación a AIG Insurance Company. Consecuentemente, resolvemos que la desestimación con relación a AIG Insurance debe ser, sin perjuicio, en aras de no menoscabar el derecho de la apelante en recurrir al foro primario para nuevamente instar una causa de acción en contra de la mencionada aseguradora.

A la luz de lo anterior, resolvemos que el foro primario actuó correctamente en desestimar, con perjuicio, en relación con Alternate Corp. Sin embargo, el foro primario actuó incorrectamente en desestimar, con perjuicio, sobre AIG Insurance Company. Corresponde modificar la *Sentencia* para que su archivo sea, sin perjuicio, con respecto a AIG Insurance Company.

**IV.**

Por los fundamentos que anteceden, se modifica la *Sentencia* apelada, a los efectos de decretar que la desestimación del caso, con respecto a AIG Insurance sea sin perjuicio, y así modificada, se confirma.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones